FILED

MAY 07 2019 LA

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. **19 CR 390** |
| v. | Violations: Title 18, United States Code, Sections 371, 1343, and 1952 |
| ROBERT KURTYCZ | |

**JUDGE THARP**

**MAGISTRATE JUDGE WEISMAN**

COUNT ONE

The SPECIAL JUNE 2018 GRAND JURY charges:

1. At times material to this indictment:

    a. The Chicago Midwest Regional Joint Board ("CMRJB"), with its headquarters in Chicago, Illinois, was a labor union. CMRJB was affiliated with Workers United and the Service Employees International Union ("SEIU," or "International Union"). CMRJB had members in approximately 13 states throughout the Midwest.

    b. Amalgamated Social Benefits Association ("ASBA") was an employee welfare benefit plan maintained by CMRJB which provided certain services for CMRJB members through premium arrangements with employers.

    c. The Sidney Hillman Health Center ("SHHC") was a primary care practice which provided medical benefits and services to ASBA. CMRJB members with eligible plans could receive primary care services at SHHC.

    d. The SHHC employed and entered independent contracting agreements with various physicians. When unable to provide SHHC patients necessary

treatment, SHHC physicians referred those patients to outside private medical service providers. Referrals could be made by an SHHC employee or by individual doctors at SHHC.

   e. Defendant ROBERT KURTYCZ was the Comptroller of CMRJB, and was an officer and employee of CMRJB. KURTYCZ was also the plan administrator for the ASBA and the Secretary/Treasurer of the SHHC.

   f. Individual A was an insurance broker for Blue Cross/Blue Shield of Illinois ("BCBS") and the owner and operator of Company A, a limited liability company doing business in Chicago, Illinois. Individual B had retained Individual A for marketing services in the past.

   g. Individual B was an officer and agent of three medical service providers, Rapid Rehab of Illinois ("RRI"), Chicago Ambulatory Surgery Association ("CASA"), and Chicago Pain and Orthopedic Institute, LLC ("CPOI") CPOI is a medical practice specializing in orthopedic surgery.

   h. Doctor A was a physician licensed to practice medicine in the State of Illinois. Doctor A maintained regular office hours and saw patients at SHHC pursuant to an independent contractor agreement prior to May 6, 2019.

   i. Doctor B was a physician licensed to practice medicine in the State of Illinois. Individual B employed Doctor B at CPOI as a physician.

  2. Between no later in or about the middle of 2013 and continuing until at least in or about June 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT KURTYCZ,

defendant herein, knowingly conspired and agreed with Individual A and Individual B, and others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to use and cause to be used a facility in interstate commerce with the intent to promote, manage, and carry on, and to facilitate the promotion, management, and carrying on, of an unlawful activity, namely, commercial bribery in violation of 720 ILCS 5/29A, and thereafter, did perform and attempt to perform an act of promotion, management, and carrying on, and facilitation of the promotion, management, and carrying on, of the unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

## Manner and Means of the Conspiracy

3. It was part of the conspiracy that KURTYCZ, in exchange for money from Individual B, offered to use his position at CMRJB and on the Board of Directors for SHHC to terminate SHHC's independent contracting agreement with the then incumbent SHHC physician (Doctor A) and to replace that physician with a CPOI doctor employed by Individual B (Doctor B) and to arrange for SHHC employees to refer patients to CPOI.

4. It was further part of the conspiracy that Individual B agreed to pay KURTYCZ money to install Doctor B as the SHHC physician, thereby enabling Doctor B to refer SHHC patients to CPOI and thereby generate additional business for CPOI, and to arrange for SHHC employees to refer patients to CPOI physicians.

5. It was further part of the conspiracy that KURTYCZ, Individual A and Individual B used cellular phones, which were interstate facilities, including the text messaging function, to communicate regarding the execution of their scheme, including to coordinate the payment, pickup and delivery of Individual B's payments to KURTYCZ through Individual A.

6. It was further part of the conspiracy that Individual B paid KURTYCZ these moneys in multiple installments, both in cash and through checks made payable to Individual A. Individual B wrote these checks from bank accounts held in the names of her various companies, including RRI, CASA and CPOI. Individual B made those checks payable to Individual A, knowing that Individual A would give all or part of those moneys to KURTYCZ in keeping with their agreement to install Doctor B as a physician at SHHC. Individual B made those checks payable to Individual A to conceal that KURTYCZ was the true recipient of the money. Individual B paid KURTYCZ cash both directly and through Individual A.

7. It was further part of the conspiracy that Individual A delivered to KURTYCZ all or a portion of the cash and check proceeds that Individual B gave Individual A for KURTYCZ. On some occasions, Individual A endorsed the entire check that Individual B made payable to him over to KURTYCZ. On other occasions, Individual A cashed the check that Individual B made payable to him and delivered all or a portion of those cash proceeds to KURTYCZ.

8. It was further part of the conspiracy that, on or about March 12, 2014, and in exchange for Individual B's payments, KURTYCZ, in his capacity as

Secretary/Treasurer of SHHC, terminated Doctor A's independent contracting agreement with SHHC and gave him a 60-day notice.

9. It was further part of the conspiracy that, on or about May 6, 2014, and in exchange for Individual B's payments, KURTYCZ, in his capacity as Comptroller of CMRJB and Secretary/Treasurer of SHHC, caused SHHC to enter an independent contracting agreement with one of Individual B's CPOI doctors, Doctor B, in keeping with his agreement with Individual B.

10. It was further part of the conspiracy that KURTYCZ and Individual B concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy, and acts done in furtherance of the conspiracy.

Overt Acts

11. In furtherance of the conspiracy and to effect its unlawful objectives, defendant KURTYCZ, with Individual B and Individual A, committed and caused to be committed the following overt acts, among others:

    a. On or about October 7, 2013, Individual B signed a check from CASA to Individual A for approximately $6,000, which Individual A later cashed and gave at least half of the proceeds to KURTYCZ.

    b. On or about February 4, 2014, KURTYCZ, Individual A and Individual B met in Chicago and discussed the terms of an agreement in which Individual B would pay KURTYCZ multiple installments of money in exchange for KURTYCZ replacing Doctor A with one of Individual B's physicians (Doctor B) at SHHC.

  c. On or about February 4, 2014, during their meeting, Individual B gave KURTYCZ an amount of cash.

  d. On or about March 12, 2014, KURTYCZ, in his capacity as Secretary/Treasurer of SHHC, gave Doctor A a letter giving Doctor A 60 days' notice of the termination of his independent contractor agreement with SHHC.

  e. On or about March 12, 2014, Individual A sent Individual B a text message, advising that KURTYCZ had given Doctor A 60 days' notice of the termination of Doctor A's independent contractor agreement with SHHC.

  f. On or about March 14, 2014, KURTYCZ directed a staff member of SHHC to obtain Doctor B's curriculum vitae from Individual B, to transmit Doctor B's curriculum vitae to the medical director of SHHC, and to recommend that the medical director of SHHC hire Doctor B as Doctor A's replacement at the SHHC physician.

  g. On or about April 8, 2014, Individual B signed a check from RRI to Individual A for approximately $5,000, which Individual A later endorsed to KURTYCZ.

  h. On or about April 8, 2014, Individual A sent KURTYCZ a text message, advising that Individual A planned to pick up the following morning a check that Individual B had written.

  i. On or about April 12, 2014, KURTYCZ deposited into his personal Fifth Third Bank account the RRI check for approximately $5,000 that Individual B had signed and made payable to Individual A on or about April 8, 2014.

  j. On or about April 21, 2014, Individual B signed a check from RRI to Individual A for approximately $10,000.

k. On or about April 21, 2014, Individual B, KURTYCZ and Individual A met at Erie Street Café in Chicago.

l. On or about May 6, 2014, KURTYCZ caused SHHC to enter into an independent contractor agreement with Doctor B.

m. On or about May 8, 2014, Individual B signed a check from CASA to Individual A for $5,000, which Individual A later endorsed to KURTYCZ.

n. On or about May 8, 2014, Individual B sent Individual A a text message, advising that she had left a check for him to collect with her doorman.

o. On or about May 8, 2014, Individual A sent Individual B a text message, advising that he had signed her May 8 check over to KURTYCZ.

p. On or about May 8, 2014, KURTYCZ deposited into his personal Fifth Third Bank account the Chicago Ambulatory Surgery Associates check for approximately $5,000 that Individual B had earlier that day signed and made payable to Individual A.

q. On or about May 19, 2014, KURTYCZ sent Individual A a text messages, asking Individual A whether he would be bringing KURTYCZ a payment.

r. On or about June 23, 2014, Individual B sent Individual A a text message, asking Individual A to address the low number of SHHC patients that had been referred to CPOI, notwithstanding her prior advance of over $85,000 toward KURTYCZ and Individual A.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL JUNE 2018 GRAND JURY further charges:

1. Paragraphs 1(a) and 1(e) of Count One are incorporated here.

2. At times material to this indictment:

   a. CMRJB employees, including defendant ROBERT KUTYCZ, who incurred business-related expenses on their credit cards were required to submit vouchers for reimbursements, with expense reports, for approval by CMRJB Managers, the CMRJB Treasurer, or the CMRJB Comptroller. CMRJB required that these expense reports contain an explanation of each expenditure and list all associated activities. CMRJB also required employees to submit with their expense reports receipts and appropriate documentation of all expenses for which they sought reimbursement.

   b. After CMRJB received employees' expense reports, and reviewed and approved the business-related expenses employees claimed to have incurred on their credit cards, CMRJB caused CMRJB funds to be transferred from a CMRJB bank account to each employee's personal bank account to pay for the claimed expenses.

   c. KURTYCZ directed CMRJB to direct deposit his salary and expense reimbursement payments to a personal bank account that KURTYCZ held with Fifth Third Bank.

   d. Fifth Third Bank routed all deposits to its bank accounts, including the personal bank account to which CMRJB directed KURTYCZ's expense reimbursement payments, through a clearinghouse in Cincinnati, Ohio.

3. Beginning on or about January 2014 and continuing until in or about September 2014 at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT KURTYCZ,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud and obtain money from CMRJB by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described in the following paragraphs.

4. It was part of the scheme that KURTYCZ submitted, and caused to be submitted, false and fraudulent reimbursement requests and expense reports to CMRJB, in which he falsely represented that he had incurred certain business-related expenses on his American Express card which he had not, in fact, incurred. KURTYCZ engaged in such conduct for the purpose of causing CMRJB to reimburse KURTYCZ for business-related expenses that KURTYCZ had not in fact incurred.

5. It was further part of scheme that the expense reports submitted by KURTYCZ did not contain the required explanation of the expenditure, did not list all associated activities, and did not contain receipts or other appropriate documentation of the expenses.

6. It was further part of the scheme that KURTYCZ, as Comptroller of CMRJB, authorized payment of his expense reports without seeking authorization or approval from another CMRJB Manager or the CMRJB Treasurer.

7. It was further part of the scheme that, by authorizing payment on his own expense reports, KURTYCZ caused CMRJB to deposit funds, which KURTYCZ was not entitled to receive, into his bank account at Fifth Third bank.

8. It was further part of the scheme that, beginning in or about January 2014, and continuing through in or about September 2014, KURTYCZ submitted nine expense reimbursement requests containing material misrepresentations and omissions and thereby caused CMRJB to issue approximately $85,962.37 in payments to KURTYCZ, which KURTYCZ was not entitled to receive.

9. It was further part of the scheme that KURTYCZ concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

10. On or about June 3, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT KURTYCZ,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, namely, a deposit in the amount of $8,488.79 that was sent from a Fifth Third Bank clearinghouse in Cincinnati, Ohio, to Fifth Third Bank in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNTS THREE THROUGH SEVEN

The SPECIAL JUNE 2018 GRAND JURY further charges:

1. Paragraph 1(a) and 1(e) of Count One and paragraphs 2 through 9 of Count Two are incorporated here.

2. On or about the dates set forth below, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT KURTYCZ,

defendant herein, for the purpose of executing the above described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, namely deposits in the following amounts, that was sent from a Fifth Third Bank clearinghouse in Cincinnati, Ohio, to a Fifth Third Bank in Chicago, Illinois, each such deposit constituting a separate count:

| Count | Date | Amount |
| --- | --- | --- |
| 3 | June 3, 2014 | $8,488.79 |
| 4 | June 24, 2014 | $15,167.52 |
| 5 | July 29, 2014 | $22,571.12 |
| 6 | August 26, 2014 | $10,990.70 |
| 7 | September 9, 2014 | $6,080.16 |

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2018 GRAND JURY alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts Two through Seven of this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $85,962.37.

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY